**CELTIC CORPORATION,**
**Plaintiff/Respondent,**

v.

**Carol TINNEA, Personal Representative of the Estate of Norma Bond, Deceased, C. Stephen Bond, Albert L. Bond, and Carol Bond Tinnea, Defendants/Appellants,**

v.

**Robert Hepp, Third–Party Defendant.**

No. ED 89925.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 7, 2008.

Application for Transfer Denied
June 24, 2008.

---

1. The Bar Plan's Motion to Dismiss is denied.

138

Rossiter & Boock, LLC, Matthew J. Rossiter, Jamie L. Boock, St. Louis, MO, for appellant.

Thomas A. Connelly, PC, Thomas A. Connelly, St. Louis, MO, for respondent.

Before MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., and GEORGE W. DRAPER III, J.

PER CURIAM.

Carol Tinnea, as Personal Representative for the Estate of Norma Bond, together with C. Steven Bond, Albert L. Bond, and Carol Tinnea, as individuals (collectively "the Bonds"),[1] appeal from the judgment setting aside a Quit Claim Deed ("Deed") between the Celtic Corporation, Grantor, and Norma Bond, Grantee, who is now deceased. On appeal, the Bonds argue the trial court erred in (1) setting aside the Deed on the grounds of inadequate consideration alone; (2) allowing the admission of parol evidence beyond the issue of actual consideration; and (3) set-

ting aside the Deed for failure to comply with Missouri's corporate acknowledgement statute. We reverse and remand.

*Factual and Procedural Background*

Viewed in the light most favorable to the trial court's judgment, the record reveals the following: Celtic Corporation is a Missouri corporation that, at the time of the relevant facts of this case, was in the business of purchasing, rehabbing, and reselling homes and businesses. Robert Hepp is and has been the President of Celtic Corporation for the duration of its existence in Missouri. Norma Bond was the Secretary of Celtic Corporation.

On August 27, 1982, Celtic Corporation purchased 4825 Little Branch Place in St. Louis County ("Little Branch"), the property at issue in this cause of action, for $128,000. Celtic Corporation paid $50,000 of the purchase price with corporate funds and secured a bank loan for the remaining $78,000. Norma Bond moved into Little Branch in 1982 and Robert Hepp moved into Little Branch in 1983. The two shared an intimate relationship. At all relevant times, Robert Hepp was married to Patricia Hepp.

On October 22, 1997, Norma Bond and Robert Hepp became joint owners with right of survivorship in all of the outstanding stock of Celtic Corporation. On December 9, 1998, Celtic Corporation, through Robert Hepp, as President, executed a Deed transferring Little Branch to Norma Bond. The Deed states as follows:

THIS QUITCLAIM DEED, Executed this 9th day of December, 1998 (year), By first party, Grantor, Celtic Corporation, Robert C. Hepp, President whose post office address is 4825 Little Branch, St. Louis, Mo. 63128 to second party, Grantee, Norma J. Bond whose

---

1. C. Steven Bond, Albert L. Bond, and Carol Tinnea are all children of the decedent.

post office address is 4825 Little Branch, St. Louis, Mo. 63128

WITNESSETH, That the said first, for good consideration and for the sum of * * * * One * * * * Dollars ($1.00) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the second party forever, all the right title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of St. Louis, State of Missouri to wit:

4825   Little Branch Place

> Blk 5–17–78 Lot 13 Old Oak Place
> 0077/0129   X   0222/0175

On the following page of the Deed, Robert Hepp's signature appears both as "Signature of First Party" and also as "Signature of Preparer." Robert Hepp's signatures were notarized and witnessed twice with acknowledgements that Robert Hepp executed the same in his authorized capacity on behalf of the entity. The acknowledgement specifically provides that Robert Hepp appeared before the Notary on December 9, 1998 and

> Robert C. Hepp
>
> personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the WITNESS my hand and official seal.

At trial, Robert Hepp testified he did not know who prepared the Deed. He testified the Deed was a mistake and that he thought he was signing an instrument to verify the ownership of the corporate stock as joint tenants with the right of survivorship. Robert Hepp also testified he did not read the Deed.

Before recordation of the Deed, the Real Estate Tax Bills were addressed solely to the Celtic Corporation. After the Deed was recorded, the name "Norma J. Bond" was added to the Real Estate Tax Bills. Robert Hepp testified he personally reviewed those tax bills as they were paid. The Deed was recorded on January 12, 1999.

By 1999, Celtic Corporation had paid off the loan on Little Branch. Celtic Corporation paid a total of $174,000 consisting of principal and interest. Celtic Corporation made most of the mortgage payments on Little Branch but Robert Hepp also made some payments from a joint account between himself and Norma Bond when Celtic Corporation had insufficient funds. The fair market value of Little Branch was $172,000 in December 1999 and $235,000 in December 2006, the time of trial.

Norma Bond died on February 25, 2005. Robert Hepp testified Celtic Corporation saw the Deed for the first time, following its execution, after Norma Bond's burial. On May 25, 2005, Norma Bond's Last Will and Testament was admitted to probate. The Will devised and bequeathed the residue and remainder of her property, which included Little Branch, to her three children, in equal shares. The Inventory and Appraisement in the Estate of Norma Bond listed Little Branch as an asset belonging to Norma Bond. The record reveals that a letter report prepared by U.S. Title as well as the Deed clearly indicate Little Branch was an asset belonging to Norma Bond at the time of her death. Carol Tinnea, daughter and Personal Representative for the Estate of Norma Bond, testified she discovered the Deed in a safe deposit box at the time of her mother's death. Robert Hepp continues to live at

Little Branch and has paid no rent to the Estate of Norma Bond despite demand having been made.

On December 28, 2005, Celtic Corporation filed its Petition to Quiet Title to Real Property, For Declaratory Judgment and For Quantum Meruit. On February 3, 2006, Carol Tinnea[2] filed her Answers to Celtic Corporation's Petition to Quiet Title to Real Property, For Declaratory Judgment and For Quantum Meruit, Affirmative Defenses and Counterclaims. She also filed a Third–Party Petition seeking back rent from Robert Hepp in the amount of $1,000 per month since the death of Norma Bond.

Following a bench trial, in which both parties presented evidence, the trial court entered judgment in favor of Celtic Corporation on its petition to quiet title and declared the Deed void and of no legal effect. The trial court entered judgment against the Bonds on their counterclaims and dismissed the Third–Party Petition with prejudice. This appeal follows.

## Standard of Review

■ A suit to set aside a deed is an action in equity. *Landers v. Sgouros,* 224 S.W.3d 651, 655 (Mo.App. S.D.2007). The standard of review in a court-tried action in equity is the same as that for any court-tried case, namely, the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law. *Id.; Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will set aside a decree or judgment on the ground that it is against the weight of the evidence only if there is a firm belief that the decree or judgment is wrong.

*Landers,* 224 S.W.3d at 655. We view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Id.* We defer to the trial court's determinations on matters of witness credibility. *Id.*

■ Setting aside a deed is an extraordinary proceeding in equity requiring that the evidence in support of the result be clear, cogent, and convincing. *Lee v. Hiler,* 141 S.W.3d 517, 523 (Mo.App. S.D. 2004). The evidentiary burden imposed by the clear, cogent, and convincing standard of proof requires that the trial court be clearly convinced of the proposition to be proved. *Id.* (*citing Robertson v. Robertson,* 15 S.W.3d 407, 415 (Mo.App. S.D. 2000)).

## Discussion

■ We address the Bonds' first and second points together as they are interrelated. In their first two points, the Bonds argue the trial court erred in setting aside the Deed on the grounds of inadequate consideration and in allowing the use of parol evidence to create an ambiguity in an otherwise unambiguous deed. The Bonds argue the trial court erroneously declared and applied the law regarding the cancellation of a properly executed and recorded deed on the grounds of inadequate consideration without a finding or evidence of other inequitable incidents. We agree.

In its judgment, the trial court found that the "purported deed is not supported by adequate consideration." It further found that "the recitation of 'one dollar and other good and valuable consideration' does not reflect any attempt by the parties to identify the true nature of the value exchanged or forbearance exercised. As

---

**2.** Carol Tinnea originally filed her answer as the sole defendant in her capacity as personal representative. Later, C. Steven Bond, Albert L. Bond, and Carol Tinnea were added as individual defendants in this case.

such, Missouri's exception applies and parole[sic] evidence is admissible to test the veracity of the recitation." Citing to *Allan v. Allan,* 364 S.W.2d 578, 582 (Mo. banc 1963), the trial court concluded "the fact that the consideration was nominal standing alone, in and of itself is sufficient to invalidate a deed." In making these findings, the trial court misapplied and misstated the law.

In Missouri, lack of consideration or inadequate consideration is not a sufficient reason for setting aside a deed. *Allan,* 364 S.W.2d at 582. To set a deed aside or otherwise invalidate it there should be "some other compelling circumstance" besides a mere lack of consideration. *Id.; Hay v. Kohl,* 902 S.W.2d 850, 853 (Mo.App. S.D.1995). More importantly, even if the consideration is for a deed is inadequate, the operative effect of the deed cannot be defeated in the absence of fraud, mistake, duress or other inequitable incidents. *Landers,* 224 S.W.3d at 663–64; *Hay,* 902 S.W.2d at 853.

To convey interest in land in Missouri, the person having authority to convey interest must do so by deed, properly acknowledged, recorded, and signed by the grantor. Section 442.130, RSMo 2000. "The essential elements of a deed are: (1) names of the parties thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor, and (5) acceptance by the grantee." *Gregg v. Georgacopoulos,* 990 S.W.2d 120, 123 (Mo.App. S.D.1999)(*quoting Boatmen's Nat. Bank of St. Louis v. Dandy,* 804 S.W.2d 783, 785 (Mo.App. E.D.1990)). For purposes of conveying title, a quitclaim deed is as effective as any other deed. *Teson v. Vasquez,* 561 S.W.2d 119, 130 (Mo.App.1977).

In addition, the parol evidence rule prohibits evidence of prior or contemporaneous agreements that vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident or erroneous admission. *CIT Group/Sales Financing Inc. v. Lark,* 906 S.W.2d 865, 868 (Mo.App. E.D.1995). If a contract appears to be a complete agreement on its face, it is conclusively presumed to be a final agreement between the parties. *Id.* Parol evidence may not be used to create ambiguity in an otherwise unambiguous contract. *Id.*

Celtic Corporation cites to *Drake v. Greener,* 523 S.W.2d 601, 606 (Mo.App. 1975) as authority for its argument that the trial court was able to consider extrinsic evidence on the issue of consideration, because "equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case." However, the full quote reads,

The general rule is that mere absence of consideration is not sufficient to warrant relief by way of equitable cancellation of an executed contract or deed in the absence of some additional circumstance creating an independent ground for granting cancellation, such as fraud or undue influence. *But where a person has been induced to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case.*

[Emphasis added.] *Drake,* 523 S.W.2d at 606. Celtic Corporation, through Robert Hepp, made a deliberate choice to convey the property to Norma Bond. There was no evidence in the record that Robert Hepp was induced to do so by Norma Bond. Similarly, Celtic Corporation did not plead and the trial court made no specific findings as to fraud or duress. The trial

court only made a finding as to Robert Hepp's alleged unilateral mistake.

A unilateral mistake occurs when only one party has an erroneous belief as to the facts. *Landers*, 224 S.W.3d at 664. Although Robert Hepp testified he believed the paper he was signing was something other than that clearly stated on the face of the Deed, which expressly declared in unambiguous terms that it was conveying Little Branch from Celtic Corporation to Norma Bond, we are barred by the parol evidence rule from considering whether Celtic Corporation intended anything other than what was written. *Emerald Pointe, L.L.C. v. Jonak*, 202 S.W.3d 652, 659 (Mo.App. S.D. 2006)(the parol evidence rule bars the use of extrinsic evidence unless the instrument to be interpreted is ambiguous).

Based on our reading of the record, there is no clear, cogent, and convincing evidence establishing that the conveyance of Little Branch from Celtic Corporation to Norma Bond was not what was intended by the parties. There is no clear, cogent, and convincing evidence supporting the trial court's setting aside of the Deed, which was an unambiguous and complete agreement on its face.[3] The trial court erred in allowing the use of parol evidence to create an ambiguity in an unambiguous deed. Points I and II are granted.

Finally, in Point III, the Bonds argue the trial court erred in setting aside the Deed for failure to comply with Missouri's corporate acknowledgement statute. Specifically, the Bonds contend the trial court erred in invalidating the Deed on the grounds that it failed to comply

with Sections 486.330 and 442.210, RSMo 2000.[4] We agree.

Sections 486.330 and 442.210 set out the requirements for a valid acknowledgement in Missouri. Section 486.330 states that, except as otherwise provided in Section 442.210, certificates of acknowledgement shall be in print not smaller than eight-point type and in "substantially" the following form. Section 486.330(3) applies to acknowledgements by a corporate officer and provides an example of forms to be followed:

> State of . . . ., County (and/or City) of _____ On this . . . . day of . . . . in the year . . . . before me, . . . . (name of notary), a Notary Public in and for said state, personally appeared _____ (name of officer), _____ (title of person, president, vice president, etc.), . . . . (name of corporation), known to me to be the person who executed the within _____ (type of document) in behalf of said corporation and acknowledged to me that he or she executed the same for the purposes therein stated. _____ (official signature and official seal of notary)

Section 442.210 also provides sample acknowledgements which "may be used in the case of conveyances or other written instruments affecting real estate." Section 442.210.1(3), which applies to conveyances by corporations, states as follows:

> On this . . . day of . . ., 19. ., before me appeared A B, to me personally known, who, being by me duly sworn (or affirmed) did say that he is the president (or other officer or agent of the corporation or association), of (describing the corporation or association), and that the seal affixed to foregoing in-

---

3. The Deed included all the required elements of a valid conveyance such as the parties' names, a description of the property, words of grant as well as execution by the grantor, and acceptance by the grantee, who recorded the Deed. *Gregg*, 990 S.W.2d at 123.

4. Unless, otherwise indicated, all further references are to RSMo 2000.

strument is the corporate seal of said corporation (or association), and that said instrument was signed and sealed in behalf of said corporation (or association) by authority of its board of directors (or trustees), and said A B acknowledged said instrument to be the free act and deed of said corporation (or association).

The acknowledgement in the instant case "substantially" complies with the requirements of both Section 486.330 and Section 442.210. The trial court erred in finding it did not. Point III is granted.

### Conclusion

The judgment setting aside the Deed is reversed and remanded for the trial court to make findings and enter judgment consistent with this opinion and on the Bonds' counterclaim for rent and other costs.