William O. CANNON, Respondent,

v.

Thomas E. MONROE, Appellant.

No. ED 92391.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 5, 2009.

Francis E. Pennington, St. Louis, MO, for appellant.

Gary A. Growe, Clayton, MO, for respondent.

## CLIFFORD H. AHRENS, Judge.

Thomas Monroe appeals from the judgment of the trial court that ordered him to sell his entire interests in the Safe Deposit Company ("SDC"), in CompuVault, Inc. and in Vault II, L.L.C. to William Cannon for $1,755,000. Finding no error, we affirm.

Viewed in the light most favorable to the judgment, the facts are as follows. Monroe and Cannon are fifty-fifty equal shareholders in SDC and CompuVault, both Missouri corporations, and equal partners in Vault II, as well as its only members. Monroe and Cannon have been in business together for a number of years. In July 1989, they entered into an agreement concerning the ownership of SDC ("SDC Agreement"). There are no agreements concerning the ownership of CompuVault or Vault II. The SDC Agreement had a number of provisions, some of which were not kept by the parties as related to regularly determining valuation of SDC.

Both Monroe and Cannon have held various executive and managerial offices within the several companies. At the time litigation started in the present case, Cannon was the president, principal executive officer, treasurer, and a director of SDC, and president of CompuVault. Monroe was chairman, CEO, secretary, and a director of SDC, and chairman, CEO, secretary and a director of CompuVault. Neither company had meetings to elect officers or directors for years. Management of the companies became deadlocked over time.

On January 16, 2004, Cannon filed a petition under sections 351.467 RSMo 2000 and 347.143 RSMo 2000.[1] Monroe filed an answer, later amended and asserting a counterclaim. Cannon's first amended petition, filed on September 3, 2004, consisted of three counts. Count I sought corporate dissolution of SDC and CompuVault, asserting that the two shareholders could not agree on continuing the businesses, and asking the court to take jurisdiction if they could not agree on some plan to dissolve and distribute the assets, and appoint a trustee or receiver to administer and wind up the affairs of the two firms. Count II of the first amended petition sought dissolution of Vault II, alleging that it was not reasonably practicable to carry on the business, and requesting that the court take jurisdiction of Vault II and appoint a trustee or receiver to administer and wind up its affairs if the parties could not reach an agreement to that effect. Count III sought a declaratory judgment from the court regarding SDC, and seeking to have a number of shares of common stock issued to Cannon based on his excess capital contributions, as well as costs of the litigation. Monroe filed an answer to the first amended petition raising several defenses and asserting a counterclaim with two counts. Count I, denominated an action under section 351.494 et seq., asserted that Monroe and Cannon were the two shareholders of SDC and deadlocked in voting power and in the management of the company's affairs, unable to break the deadlock. Monroe averred that Cannon had taken unilateral actions that were damaging, at least potentially, to SDC. Monroe sought a judgment from the court, pursuant to sections 351.855 and 351.860, where shareholders and directors of a corporation are deadlocked, ordering Cannon

---

1. All statutory citations are to RSMo 2000 unless otherwise noted.

removed as an officer and director of SDC, and ordering that a third party be appointed as a director, and ordering Cannon to sell all of his shares of SDC to either SDC or Monroe "for fair value." Count II was an action for declaratory judgment, alleging that Monroe has made excess capital contributions to SDC, and requesting that the court declare that Cannon and Monroe, as directors, issue 425 shares of SDC common stock to Monroe, and award him costs for the litigation.

A hearing was held on April 7, 2005, and by agreement of the parties no evidence was adduced at the hearing. The parties stipulated as follows:

1. [Cannon] and [Monroe] each own 50% of the issued and outstanding stock in [SDC], CompuVault and are 50–50 members in Vault II[ ].

2. Exhibit A to [Cannon]'s petition (denominated Plan of Discontinuance and Distribution[ )] was served on all appropriate parties.

3. There has been no agreement reached between the parties with respect to the Plan of Discontinuance and Distribution since it was served.

4. The Court shall enter findings of fact and conclusions of law in accordance with pleadings, exhibits and arguments of counsel.

The trial court issued findings of fact and conclusions of law on May 3, 2005. There were no objections made to these findings and conclusions. Among its findings, the trial court accepted the allegations of Cannon's petition that he and Monroe were unable to agree upon continuing the business of SDC and CompuVault, and found that they had reached no agreement regarding Cannon's Plan of Discontinuance and Distribution. The trial court granted Cannon's claim under section 351.467, concluding that there was a clear disagreement between the parties regarding the desirability of continuing the business of the companies under its current ownership and governance structure, and that Cannon had complied with section 351.467 in the filing of his petition and exhibits. The trial court appointed attorney Dudley McCarter as the trustee ("Trustee") to serve the interests of the shareholders under section 351.467, with full authority to run the business and sell the company as a going concern or to liquidate its assets. The Trustee was to use his best efforts to settle any disagreements between the parties, and the parties were ordered to cooperate fully with Trustee in terms of disposing of the business, "including the sale of the business as a whole, or disposition of business parts." The Trustee was to make reports to the trial court.

Trustee made an initial report on June 8, 2005, in which he advised the trial court that he was working with the parties to negotiate a sale to a third party or between the two parties. Trustee filed a second report with the trial court on September 23, 2005. No objections were made by either party to Trustee's first two reports. Trustee recommended that a business broker be employed to market and sell the various companies. Pursuant to the procedure set forth in his second report, Trustee and the parties selected Clayton Capital as the desired broker, and Trustee moved the trial court to approve a contract with Clayton Capital. Thereafter, some problems arose, and Monroe filed several motions reflecting his concerns about the process. The trial court delayed its order to execute a contract with Clayton Capital several times, in part based on negotiations between Monroe and Cannon. On July 18, 2006, the trial court ordered Monroe and Cannon to deliver executed copies of the listing contract with Clayton Capital to Trustee by July 21, 2006. Cannon apparently complied, but Monroe did

not. Cannon filed a motion for sanctions and/or contempt on August 21, 2006. Cannon withdrew the motion at a hearing on September 26, 2006, wherein the court was advised that the parties had agreed to participate in a binding private sale of their respective interests in the three companies. The trial court entered an order that same day directing Trustee to file a motion for approval of private sale, specifying the procedures to be used. No objection was filed by either party at that time. Trustee filed a motion to retain Brent Baxter of Clayton Capital, an investment banker, to act as a deputy trustee to assist with a private sale between Monroe and Cannon. Neither party objected to this motion. On November 6, 2006, Trustee filed a motion for approval to conduct private sale, which averred that Monroe and Cannon, through counsel, had advised him of their willingness to participate in a binding private sale of the respective interests in the three companies. Trustee stated his belief that it was in the best interest of the companies and the parties to have him conduct a private sale to conclude the litigation by having one of the parties acquire the other party's interests in the firms. Monroe had a change of heart, and on December 1, 2006, filed a motion to compel an alternative method for concluding the case. The trial court granted Trustee's motion to conduct a private sale, and set forth the requirements for that process on December 19, 2006.

The sale was held on February 20, 2007, and February 22, 2007, with Trustee reporting the results to the trial court. Trustee kept a record of each offer to buy or to sell, which was made a part of the court record, with over thirty offers and counter-offers made collectively by both parties. Monroe offered to purchase Cannon's interest for $1,735,000 at 2:30 p.m. on February 22, 2007. Cannon countered less than fifteen minutes later with an offer to

buy Monroe's interest for $1,755,000. Monroe did not reply. Consequently Cannon was the last, and highest, bidder. Cannon filed a motion for entry of final judgment on April 20, 2007, and Trustee filed a motion to approve the private sale. Monroe filed a motion for an evidentiary hearing on Count I of his counterclaim. That hearing was held on May 11, 2007, with Monroe as the sole live witness. The trial court took that matter under submission, and received Trustee's report of private sale that same date.

The trial court issued findings of fact, conclusions of law, and entered its judgment on May 24, 2007. Its findings included the following. Trustee's actions, as reflected in his reports to the court and in his motions, as approved by the court, met the mandate of section 351.467. There were no objections filed regarding Trustee's first two reports filed on June 6, 2005, and September 22, 2005, which were accepted by the trial court. There was no objection to the trial court's order of October 14, 2005, that authorized Trustee to retain a business broker to sell the three companies. The Trustee and the parties participated in the selection process for a broker, and Clayton Capital was selected, as reflected in Trustee's motion to approve a contract with Clayton Capital to sell the companies as a going concern. The trial court continued the date to execute the contract with Clayton Capital several times, before finally ordering the parties to execute the contract by July 21, 2006, and deliver the same to Clayton Capital and Trustee by that date. Cannon filed a motion for sanctions and/or contempt for failing to comply with that trial court order, but withdrew it at a hearing on September 26, 2006, wherein the court was advised that the parties had agreed to participate in a binding private sale of their respective interests in the three com-

panies. The trial court entered an order directing Trustee to file a motion for approval of private sale, specifying the procedures to be used, with no objection filed by either party at that time. On November 3, 2006, Trustee filed a motion to approve process of private sale, but on December 14, 2006, Monroe filed a motion opposing that of the Trustee, requesting that the trial court approve a process by which Cannon would be ordered to sell to Monroe at an appraised value. The trial court noted that it granted Trustee's motion for approval to conduct private sale, and set forth the conditions, and denied Monroe's motion to compel Cannon to sell to him.

The trial court further found that Trustee conducted the private sale on February 20 and 22, 2007, and that the Trustee's report of that sale was received into evidence. Its additional findings included the following. Cannon submitted the final offer to purchase Monroe's interest for $1,755,000 in the afternoon of February 22, 2007, and Monroe did not make a counteroffer to this offer. Under the circumstances of the case, Cannon's offer was fair and reasonable, and representative of the fair and reasonable value of the companies. Cannon should be authorized and directed to purchase the interests of Monroe. Regarding the issues raised in Monroe's counterclaim under section 351.494, that there is clear evidence of shareholder and director deadlock concerning the management of the companies. Based on Cannon's petition under section 351.467 as well as evidence from the parties' stipulation, the trial court's own prior findings of fact and conclusions of law, and evidence presented by Monroe on his counterclaim, relief is warranted under either section 351.467 or 351.494. Trustee was appointed under section 351.467, and that statute governs the case, as the trial court had previously declared. Section 351.467 "clearly gives" the trial court discretion to

appoint a trustee to wind up the affairs of the companies "in a method intended to realize the maximum value for the shareholders," which included the sale of the companies as going concerns.

The trial court noted that Monroe challenged whether the Trustee's private sale reflected fair value and whether the process of a private sale between shareholders was statutorily authorized, and that he contended that the sale resulted in a price being offered that was excessive and not reflective of fair value. The trial court found that Monroe testified that the fair value of fifty percent of the companies was approximately one million dollars, but in direct contradiction to that testimony, Monroe submitted an offer to buy Cannon's interest during the private sale for $1,735,000. It found that Monroe's action in making that offer is credible evidence that he believed the fair value of the companies to be at least $1,735,000. It noted that Monroe testified also that he "came to the table" with $1,700,000 in assets to use in the bidding process, and that this is credible evidence of fair value. It stated that Monroe submitted a bid for Cannon's interest in the amount of $1,300,000, and that he testified that he was prepared to pay that to Cannon, if it had been accepted. The trial court found that "taken as a whole" the private sale was conducted "fairly, reasonably, and did serve to maximize shareholder value and reflected fair value."

The trial court concluded that the appointment of Trustee and his actions accomplished the purpose of winding up the companies' affairs as directed under section 351.467. It also concluded that Trustee's decision to sell the companies as a going concern in a private sale between the parties was appropriate and met the mandate of section 351.467, and that the process was a fair and reasonable one. It

rejected Monroe's position that the trial court should have ordered Cannon to sell his interests in the companies to Monroe. The trial court concluded that the private sale conducted by Trustee represented, as a matter of law, the best method to realize the maximum value for the companies, and that Cannon's bid of $1,755,000 was a fair value for the companies, and specifically for Monroe's fifty percent interest. It stated that it had considered the "interplay" between sections 351.467 and 351.494, and concluded that reliance on the former is appropriate in this case because each party owns fifty percent of the stock in the companies. However, the trial court further concluded that:

> [P]roceeding under [section] 351.494 would not have changed the remedy available to either party. Under [section] 351.494, the Court has the discretion to fashion a remedy for deadlock short of actual dissolution, similar to the discretion and directive granted in [section] 351.467. The Courts in Missouri have recognized that a Court has discretion to impose any number of equitable remedies depending on the facts of the case and the nature of the problem.

It stated that as a matter of law, the appointment of a trustee to work with Monroe and Cannon under its supervision was a fair and equitable remedy under either statute, and that the remedy of a private sale that allowed one party to buy out the other was appropriate and equally applicable under either statute. The trial court concluded that Cannon proved his case for dissolution under section 351.467 and that Monroe proved his case for dissolution under section 351.494.

In its judgment, the trial court ordered Monroe to sell his entire interests in SDC, CompuVault, and Vault II to Cannon for $1,755,000, with the sale to be closed pursuant to the terms of the purchase agreement, to take place on July 9, 2007. It granted Counts I and II of Cannon's first amended petition, and adopted the sale of the companies pursuant to the private sale of February 20 and 22, 2007, as Cannon's remedy. It deemed all other counts of Cannon's first amended petition to be abandoned and dismissed with prejudice. The trial court granted Count I of Monroe's counterclaim, "as there was clear evidence of deadlock[,]" but stated that "no remedy is to be ordered at this time since equitable principles under [section] 351.467 have already been satisfied as set forth herein." It noted that Count II of Monroe's counterclaim had been voluntarily dismissed.

Monroe appealed the trial court's judgment to the Missouri Supreme Court, asserting that it had jurisdiction of the appeal because section 351.467 was unconstitutional, and being applied so as to preempt and impair rights and obligations under a binding, enforceable contract between the parties, in violation of Article I, section 13 of the Missouri Constitution. The Missouri Supreme Court in *Cannon v. Monroe*, 271 S.W.3d 599, 600 (Mo. banc 2008), held as follows:

> Monroe asserts jurisdiction in this Court because the validity of a statute is involved as it relates to his agreement [the SDC Agreement] with Cannon. That agreement addressed two different situations: (1) if a shareholder sought to transfer or encumber his shares of stock in the corporation or (2) if a shareholder desired to sell, encumber or otherwise dispose of the stock of the corporation without consent of the other shareholders. In this case, however, Cannon did not seek to exercise either of these options. Rather, as noted, Cannon brought this action under section

351.467 to dissolve the companies and distribute the assets.

As the agreement is not applicable to this action, the validity of section 351.467 is not implicated.

The Missouri Supreme Court accordingly ordered the appeal transferred to this Court.

Monroe raises five points on appeal. The Missouri Supreme Court effectively addressed Monroe's first two points relied on in the negative when it determined that Cannon was not proceeding under the SDC Agreement, but rather brought his action against Monroe under section 351.467 to dissolve the companies and distribute the assets. *See id.* Accordingly, we need not address those points here.

We will address Monroe's third, fourth, and fifth points together as they are closely related. In his third point relied on, Monroe contends that the trial court erred in entering judgment in favor of Cannon on his claim under section 351.467 because there is no substantial evidence to support it in that Cannon did not adduce any evidence to support the claim, nor did the court take any such evidence. In his fourth point relied on, Monroe argues that the trial court erred in entering judgment in favor of Cannon on his claim pursuant to section 351.467 because it is against the weight of the evidence in that Cannon failed to adduce any evidence in support of his claim, while he, Monroe, introduced substantial evidence in support of his claim under section 351.494. In his fifth point relied on, Monroe asserts that the trial court erred in entering judgment in favor of Cannon on his claim and in failing to enter judgment in favor of Monroe on his counterclaim because the substantial weight of the evidence supports entry of judgment in his favor on his counterclaim in that the evidence he adduced "is the

only legally adduced evidence of record in the case."

■ The standard of review in an equitable action is the same as that for any court-tried case: we will sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously states or applies the law. *Celtic Corporation v. Tinnea*, 254 S.W.3d 137, 141 (Mo. App.2008). We will set aside a judgment or order on the basis that it is against the weight of the evidence only if there is a firm belief that the judgment or order is wrong. *Id.* We view all of the evidence and the reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Id.* We defer to the determination of the trial court on matters of witness credibility. *Id.*

■ As stated above, Monroe and Cannon entered into a stipulation on April 7, 2005. That stipulation provided that Monroe and Cannon were fifty-fifty shareholders of the stock in SDC and CompuVault, and fifty-fifty members in Vault II. The parties also stipulated that Cannon's Plan of Discontinuance and Distribution, attached as Exhibit A to his petition, had been served on all of the appropriate parties, and that no agreement had been reached concerning it.

Section 351.467 states in part:

1. If the stockholders of a corporation of this state, having only two shareholders each of which own fifty percent of the stock therein, shall be unable to agree upon the desirability of continuing the business of such corporation, either stockholder may file with the circuit court in which the principal place of business of such corporation is located a petition stating that it desires to discontinue the business of such corporation

and to dispose of the assets used in such business in accordance with a plan to be agreed upon by both stockholders or that, if no such plan shall be agreed upon by both stockholders, the corporation be dissolved. Such petition shall have attached thereto a copy of the proposed plan of discontinuance and distribution and a certificate stating that copies of such petition and plan have been transmitted in writing to the other stockholder and to the directors and officers of such corporation.

2. Unless both stockholders file with the court: (1) within ninety days of the date of the filing of such petition, a certificate similarly executed and acknowledged stating that they have agreed on such plan, or a modification thereof, and (2) within one hundred eighty days from the date of the filing of such petition, a certificate similarly executed and acknowledged stating that the distribution provided by such plan had been completed, the court shall dissolve such corporation and shall by appointment of one or more trustees or receivers, administer and wind up its affairs in a method intended to realize the maximum value for the stockholders, including the sale of the company as a going concern, if appropriate. Either or both of the above periods may be extended by agreement of the stockholder, evidenced by a certificate similarly executed, acknowledged and filed with the court prior to the expiration of such period.

. . .

Based on the stipulation of April 7, 2005, the provisions of the statute were met. Nothing more is required under the language of the statute. *See* Mark Sophir and John O'Brien, "The Family Business Divorce: No–Fault Dissolution in Missouri and Practical Applications for Resolution of Deadlock," 59 *Journal of the Missouri Bar* 178 (July–August 2003). The Trustee's reports were received by the trial court. Monroe did object at the May 11, 2007 hearing on his counterclaim to the admission of Trustee's report on the private sale. However, the trial court admitted that report into evidence over Monroe's objection, which was a generalized objection that lacked any articulated legal basis. Accordingly, it preserved nothing for review. *See Khan v. Gutsgell,* 55 S.W.3d 440, 442 (Mo.App.2001).

■ The equitable remedy was appropriate. The statute requires that the trustee or receiver act so as to maximize the shareholder value, which could be through a dissolution, but it also includes selling the company as a going concern. The trial court has discretion to consider what form of equitable relief is appropriate. *See Fix v. Fix Material Company, Inc.,* 538 S.W.2d 351, 357 (Mo.App.1976); *Kirtz v. Grossman,* 463 S.W.2d 541, 545 (Mo.App. 1971). Monroe was a fifty percent owner. The private sale brought $1,755,000. He testified at one point that fifty percent of the companies was worth $1,191,000, but also testified that his fifty percent interest was worth significantly more than the $1,755,000 brought by the private sale. It is difficult to see how Monroe's fifty percent ownership interest should be worth more than Cannon's fifty percent interest.

Consequently, it would be problematic to argue that the trial court's judgment is against the weight of the evidence. Regarding Monroe's assertion that the trial court should have granted judgment in his favor on his counterclaim, we note that the trial court did grant judgment in favor of Monroe as to Count I of his counterclaim. It found and concluded that corporate dissolution was appropriate under either section 351.467 or 351.494, and that there was clear evidence of shareholder and director deadlock. The trial court concluded that whether the matter had proceeded under

either statute, the remedy would not be different. It noted that under section 351.494, it has the discretion to fashion a remedy for deadlock "short of actual dissolution, similar to the discretion and directive granted in [section] 341.467." The trial court concluded "as a matter of law that the appointment of a trustee to work with the parties and under the supervision of this Court represented a fair and equitable remedy for shareholder and director deadlock under [section] 351.467 as well as [section] 351.494." The trial court granted judgment in favor of Monroe on Count I of his counterclaim "as there was clear evidence of deadlock." It did not order a remedy "since equitable principles under [section] 351.494 have already been satisfied as set forth herein." That is to say, the remedy was the private sale by the Trustee. The relief granted by the trial court is not quite the remedy that Monroe sought, but that does not make it error or unsupported by the evidence. Points denied.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR. and SHERRI B. SULLIVAN, JJ., concur.