Jennifer J. JONES, Appellant,

v.

**WELLS FARGO AUTO FINANCE, LLC and Amy Laffoon, Respondents.**

**No. WD 74558.**

Missouri Court of Appeals, Western District.

Nov. 13, 2012.

Mark A. Buchanan, Kansas City, MO, for appellant.

Mikah K. Thompson, Donald S. Prophete, Robert L. Ortbals, Jr., Kansas City, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and ALOK AHUJA and MARK D. PFEIFFER, JJ.

ALOK AHUJA, Judge.

Jennifer Jones sued Wells Fargo Auto Finance, LLC and Amy Laffoon (collectively "Wells Fargo") for race discrimination and retaliation in employment. Wells Fargo filed a motion to enforce settlement agreement, alleging that Jones had released any employment-related claims when she executed an Agreement and Release of Claims more than eight months after filing suit, in connection with her layoff from Wells Fargo as part of a large-scale reduction in force. The circuit court granted the motion, and dismissed Jones' discrimination and retaliation claims with prejudice. Because we conclude that genuine issues of fact existed concerning the scope and enforceability of the release, we hold that the circuit court should have held on evidentiary hearing on Wells Fargo's motion before ruling on it. The circuit court's judgment is accordingly reversed, and the case is remanded for further proceedings.

## Factual Background

On May 25, 2010, Jones filed this lawsuit, alleging racial discrimination, harassment, and retaliation in employment in violation of the Missouri Human Rights Act, ch. 213, RSMo ("MHRA"). At the time of filing suit, Jones was employed as loan collector with Wells Fargo. She had been employed with Wells Fargo since September 2006. Jones, who is African–American, alleged that Laffoon, her supervisor at Wells Fargo, made a series of racially discriminatory remarks while in her presence. Jones maintained that, despite her repeated complaints regarding Laffoon's behavior, Wells Fargo failed to investigate or take appropriate disciplinary action against Laffoon. Jones further alleged that, as a result of these complaints, she was subjected to excessive discipline for a minor infraction, was denied appropriate bonuses and raises, and was given an unjustifiably low performance rating, which would negatively affect future raises and promotions.

In early 2011, Wells Fargo decided to discontinue the Kansas City collections operations in which Jones was employed, necessitating a large-scale reduction in force. In connection with her layoff, Jones—along with 190 other similarly-situated employees—was presented with a contract entitled "Agreement and Release of Claims." Pursuant to the Agreement, Wells Fargo offered the laid-off employees salary continuation or severance pay in exchange for the employees' promise to release certain claims against the company. The preamble of the Agreement Jones executed states that "[t]his Agreement and Release of Claims ... sets forth the agreement between [Wells Fargo] ... and Jennifer J. Jones ... regarding your separation from employment and salary continuation benefits...." The Agreement also contains a release, which provides in relevant part:

In consideration of the terms and benefits described in this Agreement ... you hereby release [Wells Fargo] from all claims, liabilities, demands and causes of action, known or unknown,

likely or unlikely, which you may have or claim to have against [Wells Fargo], as a result of your employment with or separation from employment. This includes, but is not limited to, claims for wrongful termination, constructive discharge, termination in violation of public policy, claims for compensation or any other monies allegedly due to you from [Wells Fargo], claims for additional severance pay or benefits, claims for breach of express or implied contract, any tort of any nature, [and] claims for discrimination or harassment based on . . . race . . . arising under federal, state, local, or common law, including but not limited to . . . all state and local human or civil rights statutes.

Jones signed the Agreement on February 3, 2011, apparently without informing or consulting with her litigation counsel. Under the Agreement, although Jones' active employment with Wells Fargo terminated on April 4, 2011, she continued to receive her regular salary until June 3, 2011. These salary continuation payments totaled approximately $7,500. According to Jones, she received the same salary continuation benefits as other employees subject to the layoff, despite the fact that—unlike these other employees—she had an MHRA lawsuit pending against Wells Fargo.

Although the Agreement was signed by both parties in February 2011, Wells Fargo did not address its effect on the pending lawsuit for several months. On May 26, 2011, Wells Fargo's litigation counsel advised Jones' counsel of her execution of the Agreement, and requested that Jones voluntarily dismiss this suit in light the Agreement's release language. After Jones failed to do so, Wells Fargo moved for leave to amend its answer on June 13, 2011, to assert release as an affirmative defense to Jones' claims. The circuit court granted Wells Fargo leave to file its amended answer. Wells Fargo then filed its Motion to Enforce Agreement and Release of Claims on June 28, 2011, alleging that the Agreement barred Jones' claims. In its Motion, Wells Fargo requested that the court "hold an evidentiary hearing and ultimately find that a valid agreement exists between [Jones] and Wells Fargo which bars [Jones'] lawsuit."

Jones opposed the Motion. She attached her affidavit to her Opposition, which stated in part:

Around February 3, 2011, when I signed the Agreement and Release of Claims, I participated in a telephone conference call with a representative of Wells Fargo's Human Resources Department, who I understood was calling from its national offices. In explaining the agreement, we were told that it pertained to Wells Fargo's salary continuation benefits, and that we could not come back and sue the company for laying us off. . . . [¶] . . . At no time was I was not [sic] told that the lawsuit [sic] would have any effect on my existing suit against Wells Fargo, which is currently pending in the Clay County Circuit Court. [¶] I understood from reviewing the terms of the agreement and release of claims, that it only applied to my separation from employment, not to my claims for hostile work environment, and discrimination, which I suffered before signing the agreement, as alleged in my Petition for Damages.

In her Opposition, Jones joined in Wells Fargo's request "that the Court schedule an evidentiary hearing, to review all the surrounding circumstances, assess the credibility of the witnesses, and determine whether a genuine issue of material fact exist [sic] regarding the parties' intentions." Wells Fargo's Reply Suggestions repeated its earlier request that the court

conduct an evidentiary hearing concerning its motion to enforce settlement.

The circuit court granted Wells Fargo's Motion in an Order entered on September 20, 2011, and ordered that the action be dismissed with prejudice. Although both parties had requested an evidentiary hearing, the court entered its Order based solely on the briefing, without hearing evidence or oral argument. The court entered a final Judgment dismissing Jones' suit on October 17, 2011. Jones appealed to this Court, arguing that the trial court erred in enforcing the settlement agreement without conducting an evidentiary hearing, given the existence of disputed issues of fact concerning the scope and enforceability of the Agreement and Release of Claims.

## Analysis

*Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596 (Mo. banc 2007), describes the procedures available to enforce an agreement purportedly settling pending litigation:

> Missouri does not have a specific process for enforcing an agreement settling a pending case. Settlement may be raised as an affirmative defense or, as here, via a motion to enforce the settlement agreement. A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement. The moving party (here, the defendants) must prove the existence of the agreement by clear, convincing and satisfactory evidence. . . .

> The trial court may take one of three possible avenues to decide a motion to enforce settlement: (1) the trial court may hold an evidentiary hearing on the motion to determine the disputed facts and then enter judgment after taking evidence to prove the agreement and any defenses the non-moving party may

proffer; (2) the court may dispose of the motion on the pleadings pursuant to Rule 55.27; or (3) the trial court may treat the motion as akin to that for summary judgment pursuant to Rule 74.04.

> . . . .

> By far the most desirable approach would be to hold an evidentiary hearing where the moving party proves the agreement and the non-moving party can then present evidence as to any defenses.

*Id.* at 599 (citations and internal quotation marks omitted). *See also, e.g., Good Hope Missionary Baptist Church v. St. Louis Alarm Monitoring Co.*, 306 S.W.3d 185, 190 (Mo.App. E.D.2010); *Paragon Lawns, Inc. v. Barefoot, Inc.*, 304 S.W.3d 298, 300 (Mo.App. W.D.2010).

Mindful of the procedural alternatives identified in *Eaton*, Wells Fargo expressly asked for an evidentiary hearing on its Motion to Enforce Agreement and Release of Claims. It made this request both in the Suggestions in Support of the Motion, and in its Reply Suggestions. Indeed, Wells Fargo's Reply Suggestions explained at some length that it had chosen the first procedural option outlined in *Eaton*, and that it was *not* seeking a judgment on the pleadings, or summary judgment:

> Defendants neither filed a Motion for Summary Judgment nor requested summary judgment from this Court. *See generally* Defendants' Motion. Instead, Defendants noted in their Suggestions in Support that a trial court may take one of three available approaches in adjudicating a Motion to Enforce a Release. The Court may (1) hold an evidentiary hearing on the Motion, (2) treat the Motion as a Motion for Judgment on the Pleadings pursuant to Missouri Rule 55.27, or (3) treat the Motion as a Mo-

tion for Summary Judgment pursuant to Missouri Rule 74.04. *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007). As noted in Defendants' Suggestions in Support, the Missouri Supreme Court has held that "the most desirable approach would be to hold an evidentiary hearing where the moving party proves the agreement and the non-moving party can then present evidence as to any defenses." *Id.* Defendants elected to seek an evidentiary hearing rather than judgment on the pleadings or summary judgment, and they specifically requested that this Court hold an evidentiary hearing.

Wells Fargo's Reply Suggestions also noted that, in her opposition to the Motion, Jones "has joined in this request" for an evidentiary hearing.

■ Even though both Wells Fargo and Jones requested an evidentiary hearing, and Wells Fargo specifically disclaimed any intent to seek judgment on the pleadings or summary judgment, the trial court entered judgment based solely on the motion papers, without conducting an evidentiary hearing, and without notice to Jones that it intended to rule on the existing record. This was error requiring reversal.

We addressed a similar situation in *Paragon Lawns*, 304 S.W.3d 298. In that case, the defendant Paragon moved to enforce a purported settlement agreement, and the plaintiff Barefoot responded by arguing that it had never accepted the defendant's settlement offer, and that even if a settlement agreement had been entered, it could avoid the agreement due to unilateral mistake. *Id.* at 300. "Fifteen days after Barefoot filed its response to Paragon's motion, the circuit court *sua sponte* entered a judgment granting Paragon's motion to enforce the settlement agreement." *Id.*

■ *Paragon Lawns* held that the trial court had erred by resolving the motion to enforce a settlement agreement without an evidentiary hearing, and without notice to the parties that it intended to rule based solely on the motion papers. We first noted that "the record does not indicate that the court disposed of the case by summary judgment pursuant to Rule 74.04." *Id.* We then held that the trial court's enforcement of the settlement agreement could not be justified as a judgment on the pleadings, because Barefoot was given no notice that the court intended to proceed in that fashion, and no opportunity to argue that disputed issues of fact prevented that disposition:

Barefoot argues in its first point that the court should not have entered a judgment on the pleadings in this case because several issues of material fact existed. [¶] Barefoot did not have the opportunity to make this argument to the circuit court, however, because the circuit court entered the judgment on the pleadings *sua sponte*. The court's action was contrary to Rule 55.27(b). Rule 55.27(b) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, *any party may move* for judgment on the pleadings." (Emphasis added.) In this case, neither party moved for a judgment on the pleadings. Paragon filed its motion to enforce the settlement agreement on March 25, 2009. Barefoot filed its response on March 30, 2009. On April 14, 2009, with no motion for a judgment on the pleadings pending and with no notice to the parties that it was considering ruling on the pleadings, the court sua sponte entered what can only be described as a judgment on the pleadings in favor of Paragon.

The circuit court's action denied Barefoot any chance to advance arguments in opposition to a judgment on the plead-

ings. By providing that it is a *party* who *moves* for a judgment on the pleadings, Rule 55.27(b) implicitly entitles the non-moving party an opportunity to respond to the motion before the court rules on it. Because the court entered the judgment on the pleadings *sua sponte*, Barefoot did not have this opportunity.

*Id.* at 301.[1] Although we recognized that the trial court might reach the same result on remand, we nevertheless reversed based on these procedural defects, emphasizing that "the strength of our judicial system lies not in its efficiency but in adhering to procedures that not only do justice but do so in a manner that engenders, to the extent possible, confidence that justice was done." *Id.*

Reversal is required in this case for the same reasons as in *Paragon Lawns*; if anything, this appeal presents a *stronger* case for reversal. As in *Paragon Lawns*, the trial court provided the parties with no notice that it intended to rule summarily without an evidentiary hearing. The lack of notice is particularly troubling in this case, where both parties requested an evidentiary hearing, and Wells Fargo explicitly stated that it was *not* seeking summary judgment or a judgment on the pleadings. Given Wells Fargo's statements, Jones could not have known that the trial court intended to rule based solely on the motion papers. The trial court's *sua sponte* ruling on Wells Fargo's Motion denied Jones a full opportunity to respond, and requires reversal.

In *Paragon Lawns*, we noted that the plaintiff Barefoot was denied an opportunity to argue to the trial court that judgment on the pleadings was inappropriate because genuine issues of material fact existed. 304 S.W.3d at 301. Jones was denied the same opportunity. She could have rightfully believed that she would have a full opportunity to present the factual circumstances surrounding her execution of the Agreement and Release of Claims at an evidentiary hearing.

▮ Despite the fact that Jones may have been lulled into awaiting an evidentiary hearing to present her version of events, her Opposition to Wells Fargo's motion identifies at least one material factual issue: her claim that a Wells Fargo representative affirmatively represented to her that the Agreement and Release of Claims applied *only* to claims arising from the termination of her employment in the 2011 reduction in force. Jones' belief that the Agreement applied only to her layoff, and not to any claims arising *during* her employment that were the subject of the pending lawsuit, is supported by the fact that the Agreement (unlike the typical litigation settlement) makes no mention of the pending litigation. Jones' reading of the Agreement is also supported by the fact that neither parties' litigation counsel were apparently involved in the drafting, negotiation, or execution of the Agreement; indeed, it appears that litigation counsel were not even aware of, and did not appreciate the potential significance of, the Agreement for several months after it was executed. The possibility exists that

---

1. We do not read *Paragon Lawns* as requiring that a party seeking to enforce a settlement agreement file a document denominated a "motion for judgment on the pleadings," separate from its motion to enforce settlement agreement. *Eaton* simply states that "the court *may dispose of the motion* [*i.e.*, the motion to enforce settlement,] on the pleadings."

224 S.W.3d at 599 (emphasis added). What *Paragon Lawns does* require is that the non-moving party be provided with some notice that the movant seeks a disposition of the motion to enforce settlement without an evidentiary hearing. Here, that did not occur; in fact, Wells Fargo said exactly the opposite.

these factual circumstances—if believed by the trial court following an evidentiary hearing—could justify the denial of Wells Fargo's Motion.[2] The existence of these genuine issues of material fact precluded the trial court from deciding Wells Fargo's Motion either as a summary judgment, or a judgment on the pleadings. *Good Hope,* 306 S.W.3d at 190; Rule 74.04(c)(6). An evidentiary hearing was required.

## Conclusion

The judgment is reversed, and the case remanded to the circuit court for further proceedings consistent with this opinion.

All concur.

---

2. It is inappropriate for us to definitively address any legal issues concerning the scope or enforceability of the Agreement and Release of Claims until the factual circumstances have been fully developed. Nevertheless, we note that Jones' allegations—if believed by the trial court—could potentially invoke principles of mutual or unilateral mistake, or fraudulent inducement of contract. *See, e.g., Celtic Corp. v. Tinnea,* 254 S.W.3d 137, 143 (Mo.App. E.D. 2008) (unilateral mistake); *Landers v. Sgouros,* 224 S.W.3d 651, 664–65 (Mo.App. S.D. 2007) (same); *Husch & Eppenberger, LLC v. Eisenberg,* 213 S.W.3d 124, 133–34 (Mo.App. E.D.2006) (mutual mistake); *Parks v. MBNA Am. Bank,* 204 S.W.3d 305, 314 (Mo.App. W.D.2006) (unilateral mistake); *Slone v. Purina Mills, Inc.,* 927 S.W.2d 358, 373 (Mo.App. W.D.1996) (fraudulent inducement); *Jacobs Mfg. Co. v. Sam Brown Co.,* 19 F.3d 1259, 1264 (8th Cir.1994) (Missouri law; same) (citing *Pinken v. Frank,* 704 F.2d 1019, 1024–26 (8th Cir.1983) (Missouri law)).