

# In the
# Missouri Court of Appeals
# Western District

GEORGE SCHUMACHER, )
)
Appellant, ) WD84570
)
v. ) OPINION FILED: APRIL 19, 2022
)
LINDA STALDER ET AL., )
)
Respondents. )

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable Michael R. Wagner, Judge

Before Special Division: W. Douglas Thomson, Presiding Judge, Gary D. Witt, Judge
and Zel Fischer, Special Judge

George Schumacher ("Schumacher") appeals the judgment of the Circuit Court of

Cass County, Missouri ("trial court") ordering the sale of a residence jointly owned by

Schumacher and Linda Stalder ("Stalder") and ordering that the proceeds from the sale be

divided equally between Schumacher and Stalder. On appeal, Schumacher claims that the

trial court erred in: 1) refusing to quiet title in his favor since he established his title was

superior to Stalder's and he should not have been required to show fraud, mistake, or undue

influence; and 2) concluding, against the weight of the evidence, that he had donative intent

when he had Stalder's name put on the deed to the residence. We affirm the judgment of the trial court.

## Factual and Procedural Background

We view the evidence and all reasonable inferences from the evidence in the light most favorable to the trial court's judgment. *Hoit v. Rankin*, 320 S.W.3d 761, 763 n.3 (Mo. App. W.D. 2010). Stalder and Schumacher began dating in February of 2013. Eventually, in approximately April of 2013, Schumacher began living with Stalder in a Blue Springs home owned by Cass Evans ("Evans"), Stalder's former brother-in-law.

Stalder wanted to be married to Schumacher or at least have some security for her future if she were to remain in the relationship, partially based on her concerns with Schumacher's health. In January of 2014, Evans told Schumacher about a house for sale in Raymore ("Raymore property") that was next to another house that Evans owned. Schumacher, Stalder, and Evans went to look at the house together, and Schumacher asked Stalder if she liked the house and if she would like to retire in that house. Stalder answered that she liked the house, and Schumacher told her that he would buy it. Stalder, Schumacher, and Evans were all present at the closing, and Schumacher told the seller that he was buying the house for Stalder. Schumacher had Stalder's name placed on the deed as well as Evans's, because Evans was going to make repairs to the house and get it into a habitable condition. Stalder and Evans held the title to the property as joint tenants. Schumacher did not have his own name placed on the deed, but he paid the entire purchase price of $76,000. Stalder and Schumacher continued to live together in Evans's Blue Springs house, and Evans moved into the Raymore property while he was performing the

2

renovations. The record is unclear as to why, but Evans was paying for the materials and costs for the repairs on the Raymore property from a $75,000 loan that he borrowed from Schumacher after the purchase of the property.

In May of 2017, following an argument, Schumacher moved back to a home in Liberty that he owned and where he had previously resided. Soon thereafter, Schumacher ended the relationship. In September of 2017, Schumacher filed suit against Stalder, Evans, and various other parties regarding the title to the Raymore property. Schumacher settled his suit against Evans by forgiving Evans's debt to him, and Evans executed a quit-claim deed transferring his interest in the Raymore property to Schumacher. In July of 2019, Evans moved out of the Raymore property, and Stalder moved into it. After the transfer of Evans's interest in the property to Schumacher, Stalder and Schumacher shared equally the expenses of maintaining the property. Stalder was still living in the house at the time of the bench trial in March of 2021. The petition was amended and various other parties were dismissed or had default judgments entered against them. The only parties still remaining at the time of trial were Schumacher and Stalder, and trial proceeded on Count II for Quiet Title and in the alternative Count V for Partition of the Raymore property. The trial court entered judgment in favor of Stalder on Schumacher's quiet title claim and granted Schumacher's claim for partition, ordering the Raymore property to be sold and awarding equal shares of the proceeds of the sale to Stalder and Schumacher. This appeal follows.

## Standard of Review

In a bench-tried action, we sustain the judgment of the trial court "unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law." *Celtic Corp. v. Tinnea¸* 254 S.W.3d 137, 141 (Mo. App. E.D. 2008) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Analysis

### *Quiet Title vs. Setting Aside a Deed*

Schumacher's first point on appeal is that the trial court erred in refusing to quiet title to the Raymore property in his favor because he established that he had superior title to Stalder due to the fact he paid the entire purchase price. He alleges the trial court erroneously required him to prove fraud, mistake, or undue influence in the seller's deeding the property to Stalder to prevail on his claim to quiet title in that Schumacher was not asking the court to set aside the deed but rather merely to find his title to the property superior to that of Stalder.

Section 527.150[1] allows a person claiming legal or equitable title in a piece of real property to bring suit in equity to determine the ownership interests and quiet the title to the property. Schumacher did not have any legal title to the Raymore property at the time he brought his suit against Stalder and Evans. Stalder and Evans had legal title to the Raymore property based upon the fact that their names were on the warranty deed.

---

[1] All statutory references are to RSMo. 2016, as currently updated by supplement, unless otherwise noted.

4

Schumacher alleged that he had superior equitable title to the property because he paid the entire purchase price. Paying some or all of the purchase price of a property can, under certain circumstances, create equitable title. *Stander v. Szabados*, 407 S.W.3d 73, 80 (Mo. App. W.D. 2013). However, Schumacher provides no authority for the proposition that equitable title based upon payment of the purchase price of the property is necessarily superior to legal title in the property, and we can find none.

Any person seeking to quiet title under section 527.150 must prove to the court that he/she has title superior to the other party or parties involved. *Id.* at 85. In considering which title is superior, the court considers all relevant evidence, and this *can include* considering whether a deed should be set aside. *See, e.g., Celtic Corp.*, 254 S.W.3d at 141-42 (Plaintiff brought a petition to quiet title, and the court analyzed the case as a "suit to set aside a deed."); *Moise v. Robinson*, 533 S.W.2d 234, 241 (Mo. App. 1975) (quiet title action wherein one party's deed was found by the court to be void). Therefore, Schumacher's argument that the trial court improperly considered his action to quiet title as an action to set aside a deed is without merit. The trial court necessarily had to consider Stalder's legal title, as evidenced by the warranty deed,[2] in determining which party's title was superior.

The crux of Schumacher's argument is that Stalder's legal title is inferior to his equitable title because she did not contribute to the purchase price. "In Missouri, lack of

---

[2] Neither the warranty deed naming Stalder and Evans as owners, nor the quit claim deed, wherein Evans relinquished his interest in the property to Schumacher, is part of the record on appeal, but they were before the trial court, and there was testimony regarding the contents of the deeds in the trial transcript, which is part of the record on appeal. The testimony regarding the contents of the deeds is undisputed between the parties.

consideration or inadequate consideration is not a sufficient reason for setting aside a deed" or, by extension, for finding that the deed fails to confer valid title. *Celtic Corp.*, 254 S.W.3d at 142. Indeed, "even if the consideration is [sic] for a deed is inadequate, the operative effect of the deed cannot be defeated in the absence of fraud, mistake, duress[,] or other inequitable incidents." *Id.*

> To convey interest in land in Missouri, the person having the authority to convey interest must do so by deed, properly acknowledged, recorded, and signed by the grantor. Section 442.130, RSMo 2000. "The essential elements of a deed are: (1) names of the parties thereto, (2) word of grant, (3) description of the property, (4) execution and delivery by the grantor, and (5) acceptance by the grantee." *Gregg v. Georgacopoulos*, 990 S.W.2d 120, 123 (Mo. App. S.D. 1999)[.]

*Id.*

Schumacher bore the burden of proof on his claim of Quiet Title. There was no evidence presented at the trial that the deed naming Stalder as an owner of the property did not satisfy the above criteria, nor was any evidence presented that Stalder's name was placed on the deed due to fraud, mistake, or duress. The evidence supported a finding that Schumacher himself directed the title to the Raymore property would be solely in the names of Stalder and Evans at the time he paid the purchase price. Schumacher offers no evidence or argument other than his having paid the entire purchase price to establish that his equitable interest is superior to the legal interest of Stalder (and, initially, Evans). The above-cited authorities establish that this fact, standing alone, is insufficient.

Schumacher's first point is denied.

6

*Donative Intent*

Schumacher's second point on appeal is that the trial court's judgment was against the weight of the evidence[3] in that the trial court wrongly concluded that Schumacher's decision to have Stalder's name placed on the deed in the absence of his own was made with donative intent, and the evidence should have led the court to conclude that Schumacher had no intention of creating a present interest in the property in Stalder's favor when he caused her name to be put on the warranty deed. We disagree.

The trial court specifically found that there was a donative intent by Schumacher to purchase the property for Stalder so she would have a place to live if something were to happen to him. That finding is supported by the record.

Because Schumacher did not have legal title until after Evans executed a quit-claim deed in his favor, Schumacher's legal title that passed to him from Evans was only the ownership interest that Evans had. A quit-claim deed does not convey a property itself, only the interest or estate of the grantor. *Di Pasco v. Prosser*, 274 S.W.2d 279, 283 (Mo. 1954). When one of multiple owners of a property seeks a partition, and the deed or deeds conveying title are silent as to the parties' respective ownership interests, there is a presumption of equal ownership. *Hoit*, 320 S.W.3d at 765. The presumption can be rebutted, however, by evidence that the parties contributed unequal amounts in the

---

[3] Schumacher's brief acknowledges the requirements for bringing an against-the-weight-of-the-evidence claim and that such a claim is analyzed differently from a claim that a judgment is not supported by substantial evidence. The brief professes to follow the prescribed process but fails to do so adequately, in particular, by setting forth the evidence in the light most favorable to his own arguments rather than in the light most favorable to the judgment. *See, generally, Meseberg v. Meseberg,* 580 S.W.3d 59, 66 (Mo. App. W.D. 2019). (setting forth the requirements for establishing that a judgment is against the weight of the evidence).

7

purchase price, as long as there is neither a familial relationship nor donative intent as between the parties. *Id.* The trial court found that there was donative intent when Schumacher caused Stalder's and Evans's names to be placed on the warranty deed, and thus Schumacher failed to rebut the presumption. We do not find the trial court's findings against the weight of the evidence.

There was evidence that Schumacher intended for the warranty deed to create an immediate ownership interest in the property in both Stalder's and Evans's favor. Schumacher directed Stalder's and Evans's names to be placed on the warranty deed *in the absence of his own name* at the time he paid for the Raymore property. Schumacher clearly intended for the warranty deed to confer immediate title to Evans because Evans was doing all of the labor to make repairs to the home and was using his own money, albeit borrowed from Schumacher, to pay the costs of the renovations. Schumacher testified that he had Evans's name placed on the deed so that Evans could borrow money to complete the renovations. There was also evidence that this was not the first or only property that Schumacher owned. He owned a house in Liberty when he met Stalder, and he and Evans rehabbed several other properties using a process similar to that used for the Raymore property. Schumacher should have known the effect of his placing Stalder's and Evans's names on the deed in the absence of his own.

Finally, there is additional evidence that Schumacher had donative intent when he caused Stalder's name to be placed on the warranty deed. Stalder testified that Schumacher bought the house for her so that she could feel secure in having some place to retire since

8

Schumacher would not agree to marry her.[4]  In fact, for several years after Schumacher moved in with Stalder and even after he had purchased the Raymore property, Schumacher maintained a separate house in Liberty.  The only evidence that Schumacher did not have donative intent is his own self-serving testimony at trial that he did not intend for Stalder's interest to take effect until after his death.  The trial court did not find this testimony to be credible.  We conclude that the evidence before the trial court supports the judgment's ultimate findings as to title and partition, and they are not, as Schumacher claims, against the weight of the evidence.[5]

Schumacher's second point on appeal is denied.

_____
Gary D. Witt, Judge

All concur

---

[4] Schumacher's brief states that "Mr. Evans, the only non-interested witness, verified that Mr. Schumacher's intention in including Ms. Stalder's name on his house's purchase deed was to provide for her with an interest in his home that would vest only after his death."  This misstates Evans's testimony.  In any event, the trial court found Evans's testimony not to be credible as its judgment finds that Schumacher purchased the house in lieu of marital commitment to Stalder.

[5] Schumacher's brief makes copious references to the trial court's "rubber stamp" judgment and challenges certain findings within the judgment.  To the extent that Schumacher wished to challenge the form of the judgment, he could have brought the issue before the trial court pursuant to Rule 78.07(c); he failed to do so and thus waives this objection.  Rule 78.07(c); *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 788 (Mo. App. W.D. 2019).