**C.M. CHRISTEN, Respondent,**

v.

**D.K. CHRISTEN, Appellant.**

No. 23561.

Missouri Court of Appeals, Southern District, Division Two.

March 2, 2001.

Gayle L. Crane, Sotta & Crane, of Joplin, MO, Attorney for Appellant.

Henry S. Clapper, Henry S. Clapper, P.C., of Monett, MO, Attorney for Respondent.

PREWITT, Judge.

D.K. Christen ("Appellant") appeals from an order of the Circuit Court of Barry County requiring the partition sale of a tract of land deeded to D.K. Christen and C.M. Christen, with proceeds to be divided evenly between the parties.

For his first point, Appellant contends that the trial court erred in requiring that the proceeds be divided evenly between Appellant and Respondent because Appellant contributed 100% of the purchase price for the real estate. Appellant contends in his second point that the trial court erred when it ordered an even distribution of the sale proceeds because Appellant made repairs and improvements and paid taxes on the real estate for which he

should be reimbursed. Appellant argues in his third point that the trial court should have set aside the deed conveying the land from him to Respondent because of a supposed drafting mistake Appellant made.

The facts adduced at trial are as follows: D.K. Christen and C.M. Christen ("Respondent") are half-brothers. On November 11, 1994, D.K. Christen, Appellant, purchased real estate located in Barry County, Missouri, through a trustees' warranty deed, for $100,000. To purchase the property, Appellant paid the trustees $50,000 cash and signed a promissory note for the remaining $50,000. Appellant borrowed $50,000 from Respondent, interest free, to pay the note. Later, at Respondent's urging, Appellant pledged to Respondent $50,000 in certificates of deposit held by the Appellant in order that Respondent would be repaid.

On November 14, 1994, Appellant executed a warranty deed conveying the property from D.K. Christen to "D.K. Christen and C.M. Christen, Joint Tenants with the Rights of Survivorship Not Tenants in Common." The deed was recorded with the Barry County Recorder of Deeds on November 15, 1994, five minutes after the Trustee's deed was recorded.

Appellant testified that he placed Respondent's name on the real estate so that Respondent would receive the property in the event of Appellant's death. Respondent acknowledged that Appellant's intent was for Respondent to receive the property if Appellant died, not to have a present interest in the land. Appellant prepared the deed himself; he did not consult an attorney.

Appellant retained exclusive possession of the property, which he lived on and used to run his business of selling carvings and artworks. Appellant paid approximately $40,000 for an 1,800 square foot building with 15 garage doors and an electric well to be constructed on the property. He paid approximately $6,000 for a carport to be constructed alongside an existing building on the property. He added a wrought-iron sliding-glass door and a twenty-four foot porch with wrought-iron railings to a house on the property, at a cost of approximately $3,000. He also paid approximately $3,000 for the 2,000 feet of cedar rail fencing placed around the perimeter of the property. In addition, Appellant paid property taxes on the property of $1,000 a year, for six years. Respondent did not contribute to the costs of any of the improvements or the property taxes; however, he did help Appellant remove a fence on the property.

A dispute over the property arose when Appellant requested that Respondent "sign off" on the property and Respondent refused. Appellant had borrowed money from Respondent to purchase property in the past and Respondent had always signed to release the property after being repaid. Respondent, however, felt that this property was different.

Respondent claims that Appellant placed his name on the property in exchange for Respondent giving Appellant half of his mother's (Appellant's stepmother's) $900,000 estate upon her death in Florida. The will in question devised the mother's estate to her then-current partner in trust to be held for Respondent for twenty-five years. Appellant was expressly excluded from the will. The brothers challenged the will, and Appellant was appointed the personal representative of the estate. The estate was split evenly between the brothers. Appellant did not take the three percent administrative fee permitted under Florida law because Respondent objected.

Respondent filed a Petition for Partition of Land in the Circuit Court of Barry County on February 13, 1997. Trial was held on December 9, 1999. A docket entry dated January 20, 2000 found that the parties each owned a one-half interest in the real estate and that the property could not be partitioned in kind. It ordered that the land be sold and the net proceeds be divided equally between the parties less court costs, the costs of the sale, and

$1,000 in attorney fees to Respondent's attorney. Appellant filed a Motion to Reconsider and Motion to Modify Judgment or, in the Alternative, Motion for New Trial on February 4, 2000. A hearing on the motion was held March 2, 2000. On March 9, 2000, the court overruled the motion. Appellant filed his notice of appeal on March 24, 2000. Judgment conforming with the docket entry was filed on March 29, 2000.

Respondent contends that Appellant's notice of appeal was not timely filed, contending that the judgment was entered on January 20, 2000 and that the Appellant only had, under Rules 81.05(2)(b) and 81.04(a), until March 20, 2000 to file his notice of appeal. We do not agree that the January 20, 2000 docket entry constituted a judgment. Under Rule 74.01(a), "[a] judgment is entered when a writing signed by the judge and denominated 'judgment' or 'decree' is filed", whether in the form of a docket entry or a separate document. As the January 20, 2000 docket entry did not include the words "judgment" or "decree", it was not a judgment. The March 29, 2000 judgment complied with Rule 74.01(a) and is the judgment for purposes of filing a notice of appeal. Appellant's notice of appeal, filed prematurely, is deemed under Rule 81.05(b) to have been timely filed. *See State ex rel. State Highway Comm'n v. Tate*, 576 S.W.2d 529, 531 (Mo.banc 1979).

█ The standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) applies to this case. *See Community Bank of Chillicothe v. Campbell*, 870 S.W.2d 838, 840 (Mo.App.1993). Thus, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

█ We first discuss Appellant's third point where he contends the deed should be set aside because of the supposed drafting mistake he made. To create a joint tenancy with a right of survivorship, the deed or will must "expressly declare" that intention. *See* § 442.450, RSMo 1994. The court examines "the words within the four corners of the deed" to determine the intent of the grantor. *Senseney v. Jeffrey*, 799 S.W.2d 636, 638 (Mo.App.1990). "Absent any ambiguity on the face of the deed, ... [parties arguing for reformation of the deed] are stuck with the language of the deed and cannot rely on parol evidence to establish an intent, other than the intent found in the language of the deed." *Morris*, 941 S.W.2d at 843. As the deed in question expressly declared in unambiguous terms that it was conveying the property from D.K. Christen to D.K. Christen and C.M. Christen "as joint tenants with rights of survivorship and not as tenants in common," we are barred by the parole evidence rule from considering whether Appellant intended anything other than what was written.

Appellant quotes from *City of Gainesville v. Gilliland*, 718 S.W.2d 553, 580 (Mo. App.1986), as authority for his argument that the court should set aside the deed creating the joint tenancy, stating:

> The mere absence of consideration is not sufficient to cancel the deed without some additional circumstances such as fraud. But where there has been no consideration, 'equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case.'

However, the full quote from the case diminishes Appellant's argument. It states that *"where a person has been induced* to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case." *Id.* (emphasis added). Appellant made a deliberate choice to convey the property to his brother. He was not induced to do so by his brother. Given these circumstances, we do not believe that setting

aside the deed is merited. Point III is denied.

■ Partition is an appropriate remedy when parties who hold land as joint tenants wish to divide the property. We agree with the trial court that a sale of the premises is required as it does not appear from the facts that the land could be divided between the parties without causing them great prejudice. *See* § 528.030, RSMo 1994; Rule 96.01.

■ Appellant argues in his first point that the trial court's order to divide the proceeds evenly was in error because Appellant contributed 100% of the purchase price of the real estate. We disagree.

■ Section 528.030, RSMo requires that the proceeds from a partition sale be divided "among all of the parties, according to their respective rights and interests." There is a presumption that if the deed does not specify the respective shares, co-tenants "take equal undivided interests" in the property,

> 'but this presumption may be rebutted by proof, e.g., that the co-tenants contributed unequal amounts toward the purchase of the property and there is neither a family relationship among the co-tenants nor any evidence of donative intent on the part of those who contributed more than their pro rata amounts towards the purchase price.'

*Montgomery v. Roberts,* 714 S.W.2d 234, 236 (Mo.App.1986) (quoting Roger Cunningham, William Stoebuck, Dale Whitman, *The Law of Property,* § 52 (1984)). *See also Estate of Snyder,* 880 S.W.2d 596, 599 (Mo.App.1994); *Community Bank of Chillicothe,* 870 S.W.2d at 841.

■ Here, we have evidence that Appellant contributed 100% of the purchase price, as he paid half of the purchase price prior to closing and executed a promissory note for the remaining half in his name alone. Although Appellant borrowed $50,000 from his brother to pay off the promissory note, there is evidence that he

repaid the loan, making Appellant's total contribution towards the purchase of the property $100,000. However, as previously noted, this unequal contribution is irrelevant in determining the joint tenants' respective shares when there is a family relationship between the tenants or when there is evidence of donative intent. *See Montgomery,* 714 S.W.2d at 236. As noted before, Appellant and Respondent are half-brothers. In addition, there is evidence of donative intent in that Appellant may have included Respondent's name on the deed to the property out of gratitude for Respondent's agreement to challenge the probate of his mother's estate from which Appellant was excluded. Thus, the presumption of equal shares stands. Point I is denied.

■ We now turn to Point II wherein Appellant seeks reimbursement for repairs, improvements and taxes related to the real property. A co-tenant in exclusive possession of property is entitled to compensation for repairs, improvements, taxes and other expenses made without the consent of other co-tenants, if the expenditures were "made in good faith, are of a necessary and substantial nature and materially enhance the value of the property." *Grunden v. Nelson,* 793 S.W.2d 569, 575 (Mo.App.1990). *See also Community Bank of Chillicothe,* 870 S.W.2d at 842. Likewise, the out-of-possession tenant may have the rental value set off against the improvements, taxes and other charges paid by the tenant in exclusive possession. *Id.* at 576. Ouster by the tenant in exclusive possession is not required. *Id.* The rental value the out-of-possession tenant is entitled to is "the reasonable rental value of the premises without the improvements made by the tenant in possession." *Bass v. Rounds,* 811 S.W.2d 775, 782 (Mo.App. 1991).

The appellant testified at trial that he paid $100,000 for the property, approximately $52,000 for improvements to the property, and approximately $6,000 for taxes, but provided no documentary proof

of his expenditures. Although it appears that Appellant's improvements were made in good faith, Appellant did not present any evidence that his expenditures increased the value of the property or by how much. Without evidence of the value of the improvements, we cannot permit reimbursement. *Knowlton v. Knowlton,* 673 S.W.2d 502, 505 (Mo.App.1984) (reimbursement for expenditures should not exceed the amount by which the value of the property was enhanced). In addition, no evidence was received as to the fair rental value of the property. In this situation, reimbursement would be inappropriate. The court's decision to divide the proceeds from the sale of the property evenly was not in error. Point II is denied.

The judgment is affirmed.

BARNEY, C.J., and GARRISON, J. concur.